[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, whose birth name was Henckel, was CT Page 4865 married to the defendant husband on October 15, 1961 in Dover Plains, New York. Both of the parties have resided continuously in the State of Connecticut for at least one year prior to the commencement of the proceedings.
One child was born to the wife during the course of the marriage, who is currently a minor, and that child is Steven M. Barrett, born October 7, 1981. Steven is also issue of the marriage.
Three other issue were born to the wife; however, they are all adults and one of the children, Robin, age twenty-five (25) is confined to Southbury Training School.
The wife testified that Steven has retention and retrieval problems and is currently in an occupational therapy program.
The husband is fifty-one (51) years of age, a high school graduate and in apparent good health.
He testified that for the first six months of their marriage they lived with his parents. They then moved into a trailer park owned by his wife's parents, purchased a unit and spent the rest of their married life, up to the separation, in the same trailer park.
The husband claims that he lost a lot of his privacy and control of his life because he lived in the trailer park. He did not, however, explain to the court why, if this were so, he made no attempt to regain his independence by moving out.
In 1987, after several separations, an argument ensued. The husband, after a business trip to Puerto Rico, never returned home. He admits that he then moved in with another woman.
Both the parties admit to excessive drinking. In fact, the husband testified that for ten years, he drank himself, almost daily, into a stupor!
The wife testified that the two primary reasons for the breakdown of the marriage were the excessive drinking and physical abuse.
She testified that for ten years the husband drank CT Page 4866 until he passed out and on occasion he would not even bother to get out of the car. He swore constantly and called her many names.
Also, his involvement with another woman contributed to the eventual breakdown. The wife also testified that his meagerness with money was a source of marital friction.
She does admit, however, that in spite of his drinking, the husband always worked during the marriage.
The wife is in apparent good health and could work but prefers not to do so.
She testified that she gets $650.00 per month for collecting rents at her parents' module home park and that this only takes about three hours a week of her time.
The husband is presently unemployed and collects $288.00 unemployment compensation plus $106.00 per week in rental and dividend income.
He owns a home jointly with his girl friend and has additional stock in the amount of approximately $40,000.00. He also has a pension plan which he claims will pay him approximately $500.00 per month at age fifty-five (55).
Other than the mobile home in which she lives, and which is jointly owned with the husband, the wife has no other assets of significant value.
From the testimony presented, the court could reasonably find that since the separation in 1987, the husband has paid approximately $10,000.00 per year to the wife and has also paid in excess of $15,000.00 in joint bills, taxes and notes.
When the husband left Perkin-Elmer, he received $75,541.00. (See Exhibit A.) There remains approximately $41,000.00 of these funds which have been invested in stocks. He also inherited $50,000.00 from his parents' estate.
Defendant's Exhibit 5 also indicates that as of April 29, 1992, the husband's retirement account has a lump sum value of $19,601.00.
Taking into consideration all of the testimony and the provisions of Connecticut General Statutes, Secs. 46b-81,46b-82 and 46b-84, the court orders as follows: CT Page 4867
1. A decree of dissolution may enter.
2. The sum of $2,250.97 is owed to the State of Connecticut, which is the amount the husband shall be responsible to pay and shall hold the wife harmless.
3. Custody of the minor child is awarded to the mother with reasonable visitation rights to the father. No overnight visitation shall be had, however, until the father and son have had an opportunity to discuss such visitation. The father may then apply to this court for overnight visitation or the parties may send a signed stipulation to the court requesting an order in accordance with the stipulation.
4. The husband shall pay as support for the minor child the sum of $56.00 per week. The court finds the guidelines to be applicable. This is to be secured by a contingent wage execution.
5. The husband shall pay the wife the sum of $125.00 per week as periodic alimony until the death of either party, the wife's remarriage, or her cohabitation, whichever event first occurs.
6. The husband shall provide medical and dental insurance for the benefit of the minor child. All unreimbursed medical and dental expense for said minor child shall be divided equally between the parties. These orders are entered subject to provisions of Connecticut General Statutes, Sec. 46b-84 (c).
7. The husband shall transfer all of his right, title and interest in the mobile home to the wife.
8. As a property distribution, the husband shall pay to the wife the sum of $25,000.00 within ninety (90) days of this decree.
9. The wife is awarded 40 percent of the plaintiff's pension benefit by way of a qualified domestic relations order.
10. Each of the parties shall be responsible for their own attorney's fees and costs as well as their liabilities.
11. Except as otherwise provided, each of the parties shall retain ownership of all properties presently in their possession and in their name. CT Page 4868
MIHALAKOS, J.